No. 23-13568

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**MELANIE MOORE,**
*Plaintiff-Appellant*

v.

**POOCHES OF LARGO, INC. AND LUIS MARQUEZ**,
*Defendants-Appellees*

Appeal from the United States District Court
For the Middle District of Florida

No. 8:20-CV-0218 MSS-SPF

## APPELLEES' ANSWER BRIEF

Matthew Seth Sarelson, Esq.
**DHILLON LAW GROUP, INC.**
Counsel for Defendants/Appellees
1601 Forum Place, Suite 403
West Palm Beach, Florida 33401
305-773-1952
Msarelson@dhillonlaw.com
Florida Bar No. 888281

1

**Certificate of Interested Persons**

Pursuant to 11th Circuit Rule 26.1-1, Appellees hereby disclose the following additional interested persons Appellant omitted from her initial brief:

1.  Abdo, Ana (Court Appointed Counsel for Appellant)

2.  Flynn, Sean P. (U.S. Magistrate Judge)

3.  Stoner, Zachary (Counsel for Appellees)

## Statement Regarding Oral Argument

Appellees agree oral argument is not necessary given the straightforward issues raised by Appellant.

# TABLE OF CONTENTS

Certificate of Interested Persons....................................................................................2

Statement Regarding Oral Argument ...........................................................................3

Statement of Issues ......................................................................................................9

Statement of the Case ................................................................................................11

   Background ..............................................................................................................11

   The Defamation Lawsuit .........................................................................................13

   The District Court History .......................................................................................14

Summary of the Argument ........................................................................................20

Argument ...................................................................................................................21

   I.    The District Court's Rule 12(b)(6) Rulings were Correct ...............................21

      A.   Appellant Did Not Engage in Protected Activity and was not entitled to FLSA protections. ..................................................................................................22

      B.   Appellant Did Not Engage in Activity Protected by Florida's Whistleblower Statute ........................................................................................................24

      C.   Appellant's Tortious Interference Claim Fails Because She Cannot Allege Unjustified Interference.....................................................................................25

      D.   Appellant Did Not Plead a Claim for Malicious Prosecution as Prior Litigation was Not "Terminated in Her Favor".......................................................27

      E.   Appellant's Claim for Civil Theft and Conversion Fail Because Nothing She Possessed was Taken From Her ...................................................................29

      F.   Appellant Waived Appellate Review of Her Claims for Fraudulent Inducement and Misrepresentation ...................................................................30

   II.    The District Court Correctly Entered Summary Judgment on Appellant's Florida Minimum Wage Act Claim..............................................................31

   III.   The Jury's Adverse Finding on Willfulness is Supported by Evidence..........34

   IV.   Defendant Marquez was Properly Dismissed from the Fraud Count .............35

   V.    The FLSA Claim is Time Barred ..................................................................37

Conclusion .................................................................................................................38

Certificate of Compliance...........................................................................................39

Certificate of Service ..................................................................................................39

# **TABLE OF CITATIONS**

**Cases**

*AGM Invs., LLC v. Bus. L. Grp., P.A.*,
219 So. 3d 920, 924 (Fla. 2d DCA 2017) ................................................... 28

*Arrow Air, Inc. v. Walsh*,
645 So. 2d 422, 424 (Fla. 1994) ................................................................. 25

*Barquin v. Monty's Sunset, L.L.C.*,
975 F. Supp. 2d 1309, 1312 (S.D. Fla. 2013) ........................................... 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) .......... 22

*Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*,
816 F.3d 1343, 1349 (11th Cir. 2016) ....................................................... 38

*Boyle v. City of Pell City*,
866 F.3d 1280, 1286 (11th Cir. 2017) ....................................................... 22

*Brown v. U.S.*,
720 F.3d 1316, 1333 (11th Cir. 2013) ....................................................... 31

*Browning v. Fla. Hometown Democracy, Inc.*,
*PAC*, 29 So. 3d 1053, 1064 (Fla. 2010) ................................................... 34

*Cap. Bank v. G & J Invs. Corp.*,
468 So. 2d 534, 535 (Fla. 3d DCA 1985) ................................................. 30

*Cedar Hills Props. Corp. v. E. Fed. Corp.*,
575 So. 2d 673, 676 (Fla. 1st DCA 1991) ................................................. 27

*Cohen v. Corwin*,
980 So. 2d 1153, 1156 (Fla. 4th DCA 2008) ............................................ 29

*Crist v. Fla. Ass'n of Crim. Def. Law., Inc.*,
978 So. 2d 134, 139 (Fla. 2008) ............................................................... 34

*Cruz v. Trinity Pruf Creations, Inc.*,
Case No. 1:14-cv-24556-UU, 2015 WL 12743768, at *2–3 (S.D. Fla. Mar. 12, 2015)
................................................................................................................. 33

*Davila v. Menendez*,

717 F.3d 1179, 1184–85 (11th Cir. 2013) ................................................................ 36

*Doe v. Celebrity Cruises, Inc.*,

394 F.3d 891, 902 (11th Cir. 2004) .......................................................................... 36

*Fla. Hosp. Waterman, Inc. v. Buster*,

984 So. 2d 478, 492 (Fla. 2008) .............................................................................. 34

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,

No. 10-CV-542, 2013 WL 3816730, at *17 (M.D. Fla. July 22, 2013) ................... 34

*Gasparini v. Pordomingo*,

972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ............................................................ 30

*Halstead v. Espinoza*,

No. 21-13356, 2023 WL 2399288, at *1 (11th Cir. Mar. 8, 2023) .......................... 31

*Hamilton v. Southland Christian Sch., Inc.*,

680 F.3d 1316, 1318–19 (11th Cir. 2012) ............................................................... 31

*Hishon v. King & Spalding*,

467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59, 65 (1984) .................................. 22

*Howard v. Walgreen Co.*,

605 F.3d 1239, 1242 (11th Cir. 2010) ..................................................................... 36

*Josendis v. Wall to Wall Residence Repairs, Inc.*,

662 F.3d 1292, 1314 (11th Cir. 2011) ..................................................................... 32

*Kasten v. Saint-Gobain Performance Plastics Corp.*,

563 U.S. 1, 14, 131 S. Ct. 1325, 179 L.Ed.2d 379 (2011) ...................................... 23

*MacAllister v. Bevis Const., Inc.*,

164 So. 3d 773 (Fla. 2d DCA 2015) ........................................................................ 29

*Mesocap Ind. Ltd. v. Torm Lines*,

194 F.3d 1342, 1343 (11th Cir. 1999) ..................................................................... 22

*Nichols v. Lab. Corp. of Am.*,

No. 2:13-CV-848-FtM-38CM, 2014 WL 820656, at *4 (M.D. Fla. Mar. 3, 2014) ...... 34

*Pace v. Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n*,

224 So. 3d 342, 344 (Fla. 5th DCA 2017) ...................................................................28

*Pinder v. Bahamasair Holdings Ltd. Inc.*,

661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009) .............................................................25

*Reich v. Davis*,

50 F.3d 962, 965 (11th Cir. 1995) ...............................................................................23

*Rowen v. Holiday Pines Prop. Owners' Ass'n*,

759 So. 2d 13, 16 (Fla. 4th DCA 2000) .......................................................................29

*Sapuppo v. Allstate Floridian Ins. Co.*,

739 F.3d 678, 681 (11th Cir. 2014) .............................................................................31

*See McGinnis v. Am. Home Mortg. Servicing, Inc.*,

817 F.3d 1241, 1254 (11th Cir. 2016) .........................................................................36

*Seminole Tribe of Fla. v. Times Pub. Co., Inc.*,

780 So. 2d 310, 315 (Fla. 4th DCA 2001) ...................................................................26

*Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd.*,

450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984) ..........................................................30

*Sly v. McKeithen*,

27 So. 3d 86, 87 (Fla. 1st DCA 2009)..........................................................................29

*Smith v. Heritage Health Care Center,*

*2017 WL 10841212 (N.D. Fla. 2017)* ...................................................................32, 34

*Tadili v. Ferber*,

Case No. 12-80216-CIV-RYSKAMP/HOPKINS, 2013 WL 12101132, at *2–3 (S.D.

Fla. Nov. 22, 2013) .......................................................................................................33

*Throw v. Republic Enter. Sys., Inc.*,

No. 8:06-CV-724-T-30-TBM, 2006 WL 1823783, at *2 (M.D. Fla. June 30, 2006) ...32

*Union Oil of Cal. Amsco Div. v. Watson*,

468 So. 2d 349, 354 (Fla. 3d DCA 1985) ....................................................................29

*United States v. Durham*,

795 F.3d 1329, 1330 (11th Cir. 2012) .........................................................................31

*Zequeira v. MMPB Group, LLC,*
    --- So. 3d ---, 2024 WL 4280491, *2 (Fla. 3d DCA Sept. 25, 2024) ............................ 33

**Statutes**

29 U.S.C. § 215(a)(3) ...................................................................................................22

29 U.S.C. § 255(a) ...............................................................................................34, 38

42 U.S.C. § 1985 ..........................................................................................................15

FLSA, 29 U.S.C. § 206(a) ...........................................................................................14

FLSA, 29 U.S.C. § 215(a)(3) .......................................................................................14

**Rules**

Rule 12(b)(6)................................................................................. 15, 20, 21, 23

# Statement of Issues[1]

1. Whether Appellant engaged in protected activity under the Fair Labor Standards Act or the Florida Whistleblower Act when she complained her pay rate did not match the job posting.

2. Whether the District Court erred in dismissing Appellant's tortious interference claim after finding Appellant failed to allege an improper agreement between Appellee Pooches and Appellant's former attorney.

3. Whether the District Court erred in dismissing Appellant's claim for malicious prosecution when a prior lawsuit against the Appellant was not terminated in Appellant's favor.

4. Whether the District Court erred in dismissing Appellant's claims for civil theft and conversion when Appellant failed to plead Appellees converted or interfered with Appellant's property.

5. Whether Appellant waived appellate review of the District Court's dismissal of her fraudulent misrepresentation claim by failing to argue the issue's merits.

6. Whether the Florida Minimum Wage Act's pre-suit notice requirement (§ 448.110(6)(a), Florida Statutes) violates Florida's constitution.

---

[1] Though not required by Local Rule 28-2, Appellees have provided their own statement of the issues because Appellant's statement includes issues not raised in her initial brief.

7. Whether the District Court properly granted Appellees' Rule 50 motion and dismissed Appellant's claim for fraudulent misrepresentation against Appellee Luiz Marquez. And, if the District Court did err in granting the motion, whether such ruling was harmless error in light of the jury returning a defense verdict on the fraud count.

8. Whether the jury's finding of no-willfulness was supported by the evidence, such that the FLSA count was time-barred.

9. Whether the District Court erred in calculating the statute of limitations for Appellant's FLSA claim.

**Statement of the Case**
*Background[2]*

Appellee Pooches of Largo, Inc. ("Pooches") is a pet retailer located in Largo, Florida that operates the local Petland franchise. D.E. 66-1, p. 1. It is indirectly and partially owned by Appellee Luis Marquez ("Marquez"). D.E. 66-1, p. 1. In early August 2018, Appellant was hired to work at Pooches after applying for the position of veterinary technician through Indeed.com. D.E. 1-1, p. 8. According to Appellant, the job advertisement indicated an annual salary of $35,000. D.E. 1-1, p. 3. For reasons never uncovered, Appellant was onboarded as a kennel technician and not a veterinary technician Appellant allegedly applied for. The kennel technician position paid hourly at a rate of $8.45 per hour.[3]

Appellant received her first physical paycheck on August 31, 2018. D.E. 1-1, p. 10; D.E. 66-1, p. 1. The paycheck covered the 24.27 hours she worked during her first week and had a gross of $205.08. D.E. 1-1, p. 10; D.E. 66-1, p. 1. On September 14, 2018, Appellant received her second paycheck via direct deposit with a gross pay of $372.39 which covered the two-week pay period ending August 31, 2018. D.E. 33-1, p. 2; D.E. 66-1, p. 2–3. In total, Appellant worked for Pooches 64.34 hours

---

[2]     The majority of Appellant's statement of facts fails to include citations to any record evidence. In fact, Appellant never made sure the record on appeal was transmitted to this Court. Due to the lack of a record on appeal, Appellees will cite the lower court docket entries and Appellant's appendix in lieu of the record on appeal.
[3]     In 2018, the minimum wage in Florida was $8.25 per hour.

during a three-week period in August 2018 and grossed $577.47. Appellant produced no evidence she worked any additional hours or that she worked off the clock.

Upon receipt of her paycheck, Appellant texted her supervisor, Allison Nieves, about what she perceived to be a pay discrepancy. D.E. 1-1, p. 11–14. In her text, Appellant was upset she was only paid $8.45 per hour instead of $35,000 annually. D.E. 1-1, p. 11–13. Ms. Nieves responded that Appellant's paycheck was correct according to company records. D.E. 1-1, p. 11. Ms. Nieves then suggested that Ms. Moore contact the corporate office if she has questions or concerns about her pay. D.E. 1-1, p. 13. Appellant did not call Pooches' corporate office and instead accused Pooches of scamming and cheating her out of the salary she was owed. D.E. 1-1, p. 13. Appellant concluded her message by warning Appellee that she would be seeking legal representation. D.E. 1-1, p. 14. Appellant was then terminated for her unprofessional messages and behavior. D.E. 1-1, p. 14.

Appellee Pooches did not hear again from Appellant until December 6, 2018, when it received a demand letter from attorney Richard Celler on her behalf. D.E. 1-1, p. 16–17 (Normally demand letters and related correspondence would be inadmissible and not relevant, but here the Appellant filed <u>all</u> her correspondence between her and her then-attorney and between her now-former attorney and the Appellees' counsel—these filed documents are relevant).

In the demand letter, Mr. Celler accused Pooches of breach of contract, violating Pinellas County's wage theft ordinance, and violating Florida's Private Whistleblower Act. D.E. 1-1, p. 16–17. Notably, the letter mentioned neither the Florida Minimum Wage Act ("FMWA") nor the Fair Labor Standards Act ("FLSA"). Through counsel, the parties engaged in settlement talks over a period of months, but no agreement was reached and all settlement talks ended as of May 2019.

*The Defamation Lawsuit*

In May 2019, a Facebook page titled "Why You Shouldn't Buy Pets from Petland" was created. D.E. 37-1, p. 28. Though the administrator of the page was not identified by name, Appellees suspected Appellant was behind the creation of the page since the page self-identified the creator as a former veterinary technician at the Largo Petland. The Facebook page contained images of dogs kept in cages (apparently destined for Asian food markets), implying that Pooches mistreats and abuses its animals, and accused Pooches of operating a "puppy mill." D.E. 37-1, p. 29. On June 13, 2019, Appellee Pooches sent Appellant a cease-and-desist letter, requesting Appellant take down the Facebook page which had by that time garnered over 100 likes and followers. D.E. 1-1, p. 42. Appellant did not respond to the letter, but rather posted the cease-and-desist letter to the Facebook page. Mr. Cellar—Appellant's counsel—was also contacted about the post but he indicated he no longer represented the Appellant.

On June 18, 2019, Appellee Pooches filed a defamation lawsuit against Appellant for her Facebook posts. D.E. 1-1, 47. The defamation lawsuit could not be served because Appellant was (and remains) homeless. App. Br. p. 17 (Ms. Moore admits she has been homeless since her employment with Appellee Pooches ended in 2018). Appellee Pooches emailed Appellant asking her to accept service, but she refused. D.E. 1-1, p. 45. On October 16, 2020, the lawsuit was dismissed without prejudice for failure to prosecute. D.E. 50-1, p. 1.

*The District Court History*

On September 16, 2020, Appellant filed her Complaint against Appellees Pooches and Luis Marquez in the Middle District of Florida. D.E. 1. In what stopped just short of qualifying as a shotgun pleading, Appellant alleged in her eighty plus page Complaint that Appellees: (1) unlawfully discharged her in violation of the FLSA, 29 U.S.C. § 215(a)(3); (2) unlawfully terminated her in violation of Florida's Private Whistleblower Act, section 448.102, Florida Statutes (2020); (3) breached the parties' contract; (4) failed to pay her the minimum wage in violation of the FLSA, 29 U.S.C. § 206(a); (5) committed wage theft in violation of Pinellas County Code of Ordinances 70.306; (6) fraudulently misrepresented the terms of the position she applied to; (7) committed promissory fraud by listing the veterinary technician position salary as $35,000; tortiously interfered with her relationship with Mr. Celler; (8) abused process by filing a defamation lawsuit; (9) committed defamation

14

per se by filing a defamation lawsuit against her; (10) committed civil conspiracy to deprive Appellant of her access to the courts in violation of 42 U.S.C. § 1985; and (11) intentionally inflicted emotional distress on her. D.E. 1.

On January 12, 2021, pursuant to Rule 12(b)(6), Appellees moved to dismiss Appellant's Complaint or to strike it as a shotgun pleading. D.E. 19. The gravamen of Appellees' motion was that each count alleged in Appellant's Complaint was entirely too vague and the entire Complaint failed to sufficiently state a single cause of action. D.E. 19, p. 8–23. On July 28, 2021, the District Court dismissed every count of Appellant's Complaint *except* for the FLSA minimum wage claim and the breach of contract claim. D.E. 28–29. Appellees filed their Answer on August 9, 2021. D.E. 33.

The case then remained mostly dormant until May 2, 2022, when Appellant unexpectedly moved to amend. D.E. 35. The proposed First Amended Complaint contained eleven causes of action, some of which were new, and some were previously alleged in Appellant's Complaint. D.E. 36. On November 10, 2022, the District Court granted Appellant's motion—over Appellees' objection—but ordered Appellant to file a new second amended complaint to cure some deficiencies found in the proposed Amended Complaint. D.E. 42, p. 5–6.

On November 24, 2022, Appellant filed her Second Amended Complaint, which remains the governing pleading. D.E. 43. In the SAC, Appellant realleged her

15

claim for failure to pay minimum wage under the FLSA, fraudulent misrepresentation, and tortious interference with contract. Additionally, she alleged new claims for a violation of the Florida Minimum Wage Act, civil theft, conversion, and malicious prosecution. D.E. 43, p. 20–51. Notably, Appellant abandoned her breach of contract claim in the SAC.

Appellees moved to dismiss the SAC. D.E. 50. Appellees specifically requested that Appellee Marquez be dismissed from all claims except the FLSA claim, as Appellant failed to allege any individual liability against or wrongdoing by Marquez. D.E. 50, p. 3. Appellee further argued that Appellant's claims for civil theft, conversion, fraud, tortious interference, and malicious prosecution all be dismissed because Appellant failed to allege sufficient facts supporting those claims. D.E. 50, p. 3–8. On February 22, 2023, the District Court dismissed the claims for civil theft, conversion, fraud, tortious interference, and malicious prosecution D.E. 60, p. 4–8. However, the Court denied the motion as to the claim for misrepresentation and refused to dismiss Appellee Marquez. D.E. 60, p. 9–11. Two weeks later, Appellees answered the SAC. D.E. 62.

On April 12, 2023, Appellees moved for summary judgment on Appellant's remaining three counts, *i.e.*, FLSA minimum wage, the FMWA violation, and fraud. D.E. 66. Specifically, Appellees argued that the FLSA violation was untimely without proof of willfulness (which would extend the two-year statute of limitations

to three years), the FMWA claim was barred because Appellant failed to provide the required pre-suit notice, and that the job posting was not actionable as fraud. D.E. 66, p. 6–10. Additionally, Appellees again argued that Appellee Marquez should be dismissed from the lawsuit due to a lack of evidence indicating he had any involvement in the Appellant's allegations. D.E. 66, p. 10–11. Appellant responded by arguing that the issue of willfulness should be left to the jury, that the FMWA's pre-suit notice requirement violates the Florida constitution, and that Appellees had committed fraud by posting a misleading job advertisement and concealed records relating to her employment. D.E. 67. On July 24, 2023, the District Court granted summary judgment on Appellant's FMWA claim, upholding the constitutionality of the pre-suit notice requirement (which Appellant failed to comply with). D.E. 71. The District Court denied the motion in all other respects. D.E. 71.

On September 18, 2023, the case proceeded to a two-day jury trial. Appellant, who was and remains *pro se*, struggled to put on her case. D.E. 141. For example, she called Appellee Marquez to the stand and merely asked him questions about a timesheet he had never seen before and could not authenticate. Appellant's App. at p. 910–16. At the end of Appellant's case in chief, Appellees moved for a judgment as a matter of law on the remaining claims, arguing that Appellant had failed to present any evidence that Appellees willfully violated the FLSA (without a finding of willfulness, the FLSA claim is time-barred), Appellant failed to prove that

17

Appellee Marquez made any statement to her (fraudulent or otherwise), and that Appellant failed to prove the extent of her damages beyond the $1,500 pay discrepancy and requested any claim for damages above that amount be stricken. Appellant's App. at p. 955–59. In response, Appellant conceded that she never raised any sort of FLSA dispute prior to filing her lawsuit. *Id*. at pp. 966-968. Appellees then rested without putting on a case in chief. *Id*. at p. 969.

At the start of the second day of trial, September 19, 2023, the District Court granted the motion in part as to Appellant's claim of fraudulent misrepresentation solely as to Appellee Marquez, ruling that Appellant failed to present evidence that Appellee Marquez made any statements (much less fraudulent statements) to Appellant. Appellant's App. at p. 992–93. The District Court denied the motion as to the FLSA claim and the fraudulent misrepresentation claim against Appellee Pooches. Appellant's App. at p. 992–93.

During closing arguments, Appellant emphasized that Appellee Pooches' job advertisement was false. Appellant's App. at p. 1003–07. In their closing, Appellees stressed that Appellant did not prove that Appellees' conduct rose to the level of a willful or reckless violation of the FLSA and that they did not fraudulently misrepresent anything to Appellant, *i.e.*, at best this nothing more than an unfortunate administrative oversight by the employer, which at best constituted a very small pay discrepancy for her three weeks of employment. Appellant's App. at p. 1018–26.

18

The jury returned a mixed verdict. It found in favor of Appellant on her FLSA claim in the amount of $1,548.80,[4] but also found against Appellant on the issue of willfulness. D.E. 126. It found in favor of Appellee Pooches on the fraud claim. D.E. 126. In light of the jury's verdict on willfulness, the District Court applied the FLSA's two-year statute of limitation and entered judgment in favor of the Appellees. D.E. 127. Appellant's timely appeal followed.

//

---

[4]     Appellees have no idea how this number was calculated; it appears the jury simply awarded her the difference between the salary she believed she was owed and the hourly amount she actually made for those three weeks. While it might be the correct measure of damages for Appellant's abandoned breach of contract claim, this is not the correct measure of damages under the FLSA. Regardless, it is moot in light of the jury's finding on willfulness.

**Summary of the Argument**

Appellant managed to turn what was, at best, a small claims court dispute over approximately $1,500 into a five-year legal epic.

Appellant's initial brief rehashes arguments the District Court summarily rejected. The issues not rejected by the District Court were rejected by the jury. Notably, Appellant raises little to no legal argument in her brief. Indeed, each of Appellant's arguments consists of rambling quotes and citations to various legal authority without any real application or analysis. Simply put, this appeal should be summarily affirmed because Appellant has failed to establish any reversible error in any of the District Court's rulings or the jury's factual findings.

For ease of reference, the Appellees will first address the counts dismissed pursuant to Rule 12(b)(6), then the counts dismissed pursuant to Rule 56, and then the counts resolved at trial.

//

**Argument**

## I. The District Court's Rule 12(b)(6) Rulings were Correct

Each count dismissed pursuant to Rule 12(b)(6) was correctly dismissed. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to the state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A claim is sufficiently pled and "facially plausible" when it contains facts which allow the reviewing court "to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). "In reviewing an order granting a motion to dismiss, the appellate court must accept the factual allegations of the complaint as true and may affirm the dismissal of the complaint 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Mesocap Ind. Ltd. v. Torm Lines*, 194 F.3d 1342, 1343 (11th Cir. 1999) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59, 65 (1984)). However, a complaint riddled with conclusory allegations that are based solely upon the Plaintiff's *information and belief* should not be presumed true when alleged without any supporting allegations or evidence. *See Twombly*, 550 U.S. at 570.

21

A. *Appellant Did Not Engage in Protected Activity and was not entitled to FLSA protections.*

Appellant's FLSA retaliation claim was correctly dismissed because she never engaged in protected activity. "The FLSA makes it unlawful for an employer to fire an employee 'because' the employee asserted rights protected under the statute." *Reich v. Davis*, 50 F.3d 962, 965 (11th Cir. 1995). Specifically, the Act prohibits employers from retaliating against an "employee [who] has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). For the anti-retaliation protections of the FLSA to apply, the employee's complaint to her employer "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 179 L.Ed.2d 379 (2011). Though the employee is not required to expressly identify the FLSA in her complaint, the complaint must, at a minimum, make the employer aware of the existence of an FLSA grievance. *See Barquin v. Monty's Sunset, L.L.C.*, 975 F. Supp. 2d 1309, 1312 (S.D. Fla. 2013).

Here, Appellant's complaint alleges, at best, a breach of contract claim, not one for FLSA retaliation. In her SAC, she correctly alleged she was paid $8.45 per hour for about 24 hours of work. She was paid above the minimum wage (which was

$8.25 per hour in 2018) and did not work in excess of 40 hours per week in any given week. Though she was paid above minimum wage, Ms. Moore proceeded to complain to Appellee Pooches' administrator that she was to be paid $35,000 annually according to the job posting she saw. In her "complaint" to her supervisor, Appellant did not mention the FLSA or give any indication she was making a minimum wage related claim or was claiming she worked unpaid overtime. Indeed, the words "minimum wage" and "overtime" appear nowhere in the text exchange.

Appellant merely accused Appellee of pulling a "bait and switch" by not paying her as advertised in Appellee's job posting and advised her supervisor that she would be seeking legal representation. Whatever contractual rights she was referencing in her text exchange is not a right protected under the FLSA. And notably, the demand letter her then-attorney Richard Celler sent made no reference to the FLSA, whether it be minimum wage, overtime or retaliation. Ms. Moore did not complain to Appellee that she was denied minimum wage or overtime, and thus, as a matter of law, did not engage in activity protected by the FLSA. Accordingly, this Court should affirm the dismissal of her FLSA retaliation claim.[5]

---

[5] Appellant's entire alleged protected activity is the text exchange between her and Alison Neives attached to the Complaint. D.E. 1-1, p. 11–14. By attaching it the Complaint, the district court was entirely justified resolving the issue of protected activity under Rule 12(b)(6) because no other evidence would change the analysis.

B. *Appellant Did Not Engage in Activity Protected by Florida's Whistleblower Statute*

Appellant's related claim under Florida's private whistleblower act similarly fails because she never engaged in protected activity. Florida's whistleblower retaliation law is designed "to protect private employees who report or refuse to assist employers *who violate laws enacted to protect the public*." *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994) (emphasis added). To qualify for whistleblower protection, "the activity complained of must be in violation of a 'law, rule, or regulation,' which is defined as 'any statute or ordinance of any rule or regulation adopted pursuant to any federal, state, or local *statute or ordinance* applicable to the employer and pertaining to the business.'" *Pinder v. Bahamasair Holdings Ltd. Inc.*, 661 F. Supp. 2d 1348, 1353 (S.D. Fla. 2009) (emphasis added) (quoting §§ 448.101–102, Fla. Stat.). "The last phrase of the definition indicates that the conduct complained of must be in violation of a law, rule or regulation that is somehow more specifically applicable to the business, as opposed to the public at large." *Id.* Simply put, common law breach of contract or fraud is not protected activity under the statute.

Here, Appellant alleged that she engaged in protected activity "when she objected to Defendant's failure to pay her at the corresponding wage in breach of the employment contract." Complaining about an alleged discrepancy between a job advertisement and a paystub is not protected activity under Florida's Private

24

Whistleblower Act. Failing to pay an employee in accordance with a contract may give rise to an action for common law breach of contract, but it does not violate a "law, rule, or regulation." Section 448.102 of the Florida Statutes is entirely inapplicable.

C. *Appellant's Tortious Interference Claim Fails Because She Cannot Allege Unjustified Interference*

Appellant's claim that the Appellees tortiously interfered with her contract with her former attorney Richard Celler is entirely frivolous. She believes that her former attorney terminated his representation because of tortious conduct by the Appellees.

Appellant's sole argument is that the District Court incorrectly required her to "prove a pecuniary interest between Defendants and her counsel[.]" App. Br. at 34. Appellant's argument is unconvincing and ignores the fact that she failed to allege all elements for a claim of tortious interference with a contract.

Under Florida law, a claim for tortious interference with a contract requires proof of: "(1) the existence of a business relationship between the plaintiff and a third person[;] (2) the defendant's knowledge of the relationship; (3) *an intentional and unjustified interference* with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting from the third person's failure to perform." *Seminole Tribe of Fla. v. Times Pub. Co., Inc.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001) (emphasis added). To satisfy

25

the third element, the plaintiff must prove the interfering party interfered with the relationship through influence or coercion. *See Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991).

Here, the District Court noted in the dismissal order that Appellant failed to plead a pecuniary relationship between Appellees and Appellant's prior counsel, *i.e.*, no side-agreement or bribe. Appellant misinterprets this to mean that the District Court added an additional element for her to prove tortious interference. But that is not what happened. Rather, the trial court meant that Appellant failed to plead the existence of an *unjustified interference* with her relationship with Mr. Celler, the essential element to any tortious interference claim. Appellant merely pled "*upon information and belief*, that the relationship between Attorney Celler and the Defendant, either independently or through counsel, was, or became, pecuniary in nature and as a result of this relationship, caused Attorney Celler to act contrary to his fiduciary to his client, the Plaintiff." Compl. at 69, ¶ 213. Appellant does not plausibly allege an improper agreement or arrangement between Appellees and Mr. Celler. Essentially, she failed to allege how Appellees coerced or influenced Mr. Cellar into reneging on his representation of Appellant. She makes no allegation which would allow a court to infer an illicit relationship between the Appellees and Mr. Celler. Dismissal of her tortious interference claim was correct.

But more importantly, Appellant filed <u>all</u> correspondence between her former attorney and the Appellees' counsel, and nothing in that correspondence was anything but two lawyers disagreeing about the facts and the law in what would be a failed effort to reach a settlement. A defense lawyer telling a plaintiff's lawyer that the plaintiff has no claim is not actionable, and Appellant has no theory or legal support otherwise. *See Pace v. Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n*, 224 So. 3d 342, 344 (Fla. 5th DCA 2017) ("Absolute immunity covers ongoing litigation and 'conduct that is necessarily preliminary' to judicial proceedings.") (quoting *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017)).

And finally, and perhaps most telling about this entire lawsuit, Appellant failed to inform this Court that she actually called her former attorney as a trial witness and he testified that he stopped representing her when he "believed [Appellant] to be lying." Appellant's App. at p. 881: 17–20. Appellant could have asked Celler if he made any side-deal with the Appellees, but she chose not to do so. Celler's trial testimony is fatal to any claim for tortious interference.

D. *Appellant Did Not Plead a Claim for Malicious Prosecution as Prior Litigation was Not "Terminated in Her Favor"*

Appellant's malicious prosecution claim fails as a matter of law because the state court defamation action was not terminated in her favor. Under Florida law, the *essential* element to any claim for malicious prosecution is an allegation that "the termination of the original proceeding constituted a bona fide termination of that

proceeding in favor of the present plaintiff." *MacAllister v. Bevis Const., Inc.*, 164 So. 3d 773 (Fla. 2d DCA 2015). The key phrase being "in favor of the present plaintiff." Though an involuntary dismissal of the prior action which forms the basis of the malicious prosecution claim may seem like a "termination in favor of the present plaintiff," not all dismissals are considered "favorable." To determine if the dismissal qualifies as favorable, the court "must look to whether the manner of termination reflects on the merits of the case." *Union Oil of Cal. Amsco Div. v. Watson*, 468 So. 2d 349, 354 (Fla. 3d DCA 1985). Generally, dismissal for lack of prosecution due to a failure to serve the complaint is not a termination in favor of the present plaintiff for purposes of a malicious prosecution claim. *See Cohen v. Corwin*, 980 So. 2d 1153, 1156 (Fla. 4th DCA 2008) ("Where dismissal is on technical grounds, for procedural reasons, or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination."); *Rowen v. Holiday Pines Prop. Owners' Ass'n*, 759 So. 2d 13, 16 (Fla. 4th DCA 2000) ("Florida follows the rule that a dismissal on procedural grounds, inconsistent with a final termination of the lawsuit, does not constitute a 'bona fide termination.'"); *Sly v. McKeithen*, 27 So. 3d 86, 87 (Fla. 1st DCA 2009) (explaining a dismissal for failure to serve a complaint is considered as a "dismissal for procedural noncompliance").

Here, the dismissal of the defamation action for lack of prosecution cannot qualify as a bona fide termination in favor of Appellant. Appellee Pooches'

28

defamation action was dismissed without prejudice for *lack of prosecution* after Appellee Pooches was unable to serve it. Appellee Pooches was unable to serve Appellant because she was and remains homeless, D.E. 50-1, and she refused to accept service through email. D.E. 1-1, p. 45. Nothing in the dismissal order can be construed as entering any sort of ruling in Appellant's favor, as the trial court never had the opportunity to consider the merits of the case.

E. *Appellant's Claim for Civil Theft and Conversion Fail Because Nothing She Possessed was Taken From Her*

Appellant's claim for civil theft and conversion fails because the Appellees never took anything she possessed. Florida defines conversion as "an unauthorized act which deprives another of his *property* permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984) (emphasis added). "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). "A mere obligation to pay money" cannot be enforced through an action for civil theft or conversion. *See Cap. Bank v. G & J Invs. Corp.*, 468 So. 2d 534, 535 (Fla. 3d DCA 1985).

Here, the alleged stolen "property" is nothing more than the wages she claims she is owed, which could be remedied via breach of contract or a similar claim. She has no viable claim for conversion or civil theft.

F. *Appellant Waived Appellate Review of Her Claims for Fraudulent Inducement and Misrepresentation*

Appellant's fraud claim was tried to a jury and the jury returned an adverse verdict. Unhappiness with an adverse verdict is not a basis to appeal. But in any event the issue is waived.

In her brief, Appellant does not address the pretrial dismissal of these claims and merely "directs the reviewing Court to App'x 2, 36, p. 50–57 for her argument." Appellant's Br. at 38. Appellant has waived the issue by failing to address it. *See Halstead v. Espinoza*, No. 21-13356, 2023 WL 2399288, at *1 (11th Cir. Mar. 8, 2023) ("An appellant abandons an issue by failing to sufficiently argue the merits of the issue."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Brown v. U.S.*, 720 F.3d 1316, 1333 (11th Cir. 2013); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012), *overruled in part by United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make

arguments and cite authorities in support of an issue waives it."). Nevertheless, a variation of the fraud claim went to the jury, but Appellant lost.

## II. The District Court Correctly Entered Summary Judgment on Appellant's Florida Minimum Wage Act Claim

An appellate court reviews an order granting summary judgment *de novo* "and applies the same legal standards as the district court, construing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011).

Appellant's Florida (not federal) minimal wage claim was properly dismissed under Rule 56 because she failed to comply with the Act's pre-suit notice requirement. Section 448.110 of the Florida Statutes (Florida's minimum wage act) includes a mandatory pre-suit notice requirement. *Id*. at § 448.110(6)(a) (requiring an employee "identify the minimum wage to which [Appellant] claim[ed] entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." § 448.110(6)(a); *see Throw v. Republic Enter. Sys., Inc.*, No. 8:06-CV-724-T-30-TBM, 2006 WL 1823783, at *2 (M.D. Fla. June 30, 2006) ("[The Act] requires potential plaintiffs to notify their employers in writing of their intent to file suit[.]").

Failure to provide the required notice is fatal. *See, e.g., Smith v. Heritage Health Care Center, 2017 WL 10841212 (N.D. Fla. 2017)*; *Cruz v. Trinity Pruf*

*Creations, Inc.*, Case No. 1:14-cv-24556-UU, 2015 WL 12743768, at *2–3 (S.D. Fla. Mar. 12, 2015); *Tadili v. Ferber*, Case No. 12-80216-CIV-RYSKAMP/HOPKINS, 2013 WL 12101132, at *2–3 (S.D. Fla. Nov. 22, 2013).

Five weeks ago, Florida's Third District Court of Appeal affirmed dismissal with prejudice of a Florida Minimum Wage Act case where the former employee failed to provide the required presuit notice. *See Zequeira v. MMPB Group, LLC*, --- So. 3d ---, 2024 WL 4280491, *2 (Fla. 3d DCA Sept. 25, 2024). *Zequeira* did not expressly address the *constitutionality* of the presuit notice requirement, but it made clear that presuit notice is an important, non-negotiable condition precedent "to encourage possible settlement and resolution prior to, and ideally without, litigation." *Id*. at *3.

Here, it is undisputed that Plaintiff did not provide notice to Appellees pursuant to section 448.110(6)(a). The only "notice" she provided to Appellees was a demand letter sent by Mr. Celler on December 6, 2018. But the letter says nothing about a violation of minimum wage in any way. Nor does it "identify the minimum wage to which [Appellant] claim[ed] entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." § 448.110(6)(a), Fla. Stat.

Appellant claims section 448.110(6)(a)'s notice requirement violates the Florida Constitution. But a majority of Florida federal courts disagree. *Smith v.*

*Heritage Health Care Center, 2017 WL 10841212 (N.D. Fla. 2017)* (collecting cases upholding the constitutionality of section 448.110(6)(a)'s notice requirement). A number of these courts have reasoned that "under Florida law 'the Legislature may provide additional laws addressing a self-executing constitutional scheme assuming that such laws supplement, protect, or further the availability of the constitutionally conferred right.'" *Id.* (quoting *Browning v. Fla. Hometown Democracy, Inc., PAC*, 29 So. 3d 1053, 1064 (Fla. 2010). Though a constitutional amendment "is self-executing and does not require legislative enactment, the Legislature is still free to give force and effect to its provisions so long as it does not run afoul of the rights granted in the constitution." *Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 492 (Fla. 2008). As one district court explained: "Allowing a cause of action to proceed under the Amendment without meeting the notice requirement renders Section 448.110(10) and the FMWA meaningless." *Garcia-Celestino v. Ruiz Harvesting, Inc.*, No. 10-CV-542, 2013 WL 3816730, at *17 (M.D. Fla. July 22, 2013); *see also Nichols v. Lab. Corp. of Am.*, No. 2:13-CV-848-FtM-38CM, 2014 WL 820656, at *4 (M.D. Fla. Mar. 3, 2014).

Here, Appellant never argues section 448.110(6)(a) is unconstitutional except a vague reference to the minority holding that the statute is unconstitutional. Statutes are presumed constitutional, and Appellant bears the burden to prove otherwise. *See, e.g.*, *Crist v. Fla. Ass'n of Crim. Def. Law., Inc.*, 978 So. 2d 134, 139 (Fla. 2008)

("[S]tatutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome.") (emphasis in original). Appellant has not done so and thus summary judgment on the Florida minimum wage claim was correct.[6]

### III. The Jury's Adverse Finding on Willfulness is Supported by Evidence

Appellant's FLSA claim is barred by the two-year statute of limitation, absent a finding that the FLSA violation was willful, in which case the statute of limitations is extended to three years. *See* 29 U.S.C. § 255(a). "Willfulness" under the Act is well understood:

> An employer willfully violates the Act if he should inquire as to whether his actions violate the Act, but fails to do so. . . . [A] willful violation of the Act occurs when an employer either knows that his conduct is prohibited by or show[s] reckless disregard for the minimum wage laws. An employer knowingly violates the Act if he disregards the minimum wage laws deliberately or intentionally, such as by ignoring 'advice from a responsible official . . . that the conduct in question is not lawful[.]' An employer acts with reckless disregard for the Act if the employer's conduct is more than 'merely negligent,' and is blameworthy 'if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry[.]' In other words, an employer does not commit a willful violation if he 'acts unreasonably, but not recklessly, in determining [his] legal obligation' under the Act. The burden rests

---

[6] Appellant also makes a passing reference to a lack of discovery, but she never took issue with discovery in the district court and in event whether she provided pre-suit notice is the kind of information squarely in her possession. She has never—at the district court or appellate court—argued that she complied with the pre-suit notice requirement, her entire argument is that she does not have to.

with the employee to 'prove by a preponderance of the evidence' that her employer acted willfully.

*Davila v. Menendez*, 717 F.3d 1179, 1184–85 (11th Cir. 2013) (internal citations omitted).

Here, despite her claims that "the underlying facts demonstrate Defendants both knew they were in violation [of the FLSA] and also attempted to conceal the violation with misrepresentations and retaliation," Appellant did not introduce any of these underlying facts at trial to support any proof of willfulness nor does she cite to any record evidence in her initial brief. The jury's verdict was entirely correct and it should be affirmed. *See McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) ("And, as we have stressed, it is the jury's task—not the court's—to weigh conflicting evidence and inferences, and determine the credibility of witnesses.").

## IV.  Defendant Marquez was Properly Dismissed from the Fraud Count

Similar to an order granting a motion for summary judgment, an appellate court applies the *de novo* standard of review to an order granting a Rule 50 motion for judgment as a matter of law. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902 (11th Cir. 2004). An appellate court will affirm an order granting a Rule 50 motion when the record evidence indicates there was "no legally sufficient basis for a reasonable jury to find for him on a material element of his cause of action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010).

Appellant argues that the trial court erred in granting Appellees' Rule 50 motion for judgment as a matter of law and "dismissing" Appellee Luis Marquez, citing his status as an employer under the FLSA. Notably, Appellant does not explain how the trial court erred in "dismissing" Appellee Marquez and merely recites caselaw concerning the definition of an employer under the FLSA.

Appellant appears to be confused as to what occurred when the District Court granted Appellees' Rule 50 motion. The District Court did not dismiss Appellee Marquez from the action, but instead granted the motion solely as to Appellant's claim for fraudulent misrepresentation. The District Court let the jury decide whether Appellee Marquez was personally liable under the FLSA. Thus, Appellee Marquez was not "dismissed" from the underlying action.

Regardless, not once during the four plus years of litigation did Appellant introduce any evidence that Appellee Marquez could have been personally liable under either the FLSA or for fraudulent misrepresentation. Appellant failed to establish Appellee Marquez had <u>any</u> personal knowledge of Appellant or any of the alleged conduct giving rise to Appellant's claims against him in his individual capacity. Appellee Marquez lives and works in Broward County, Florida, and indirectly owns Appellee Pooches. His affidavit, filed with Appellees' motion for summary judgment, establishes he has never met or communicated with Ms. Moore in any way, he did not make the job posting Appellant responded to, he did not

36

interview Appellant, he did not make her a job offer, he did not review her time records or paystubs, he did not terminate her, and he did not have anything to do with any alleged discrepancy over her rate of pay. D.E. 66-1. In fact, he was entirely unaware of her existence until Mr. Celler sent his demand letter on Appellant's behalf. At trial, Ms. Moore was given the opportunity to elicit testimony to establish his personal knowledge through direct examination of Appellee Marquez, but only asked him two questions about a time sheet. There is no record evidence that remotely insinuates that Appellee Marquez is individually liable for <u>any</u> of the Appellant's claims.

Finally, Appellant's entire argument is irrelevant because the FLSA claim is time-barred. It does not matter whether Luis Marquez is personally liable as an employer under the Act. To the extent Appellant claims Marquez should not have been dismissed as to the fraud claim – an argument Appellant does not make – this too is irrelevant because the jury rejected her fraud claim. Accordingly, the District Court's Rule 50 order was correct.

## V. The FLSA Claim is Time Barred

Lastly, Appellant challenges for the first time the triggering event for the statute of limitations. She never made such an argument in the District Court and thus it is waived. *See Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016) ("As a general rule, an issue not raised in the district

court and raised for the first time in an appeal will not be considered by this court."").

Regardless, she's wrong. A civil action to enforce the FLSA must be commenced within two years of the violation, however, the statute of limitations is extended to three years for "a cause of action arising out of a willful violation." 29 U.S.C. § 255(a). The jury found against the Appellant on willfulness, and thus the two-year statute of limitations applies.

Appellant was employed by Appellee Pooches from August 13, 2018 through August 31, 2018. Ms. Moore had until August 31, 2020 to sue, but waited until September 16, 2020.[7] Accordingly, her FLSA claim is time-barred.

## Conclusion

For the above reasons, Appellees respectfully request that this Court affirm on all issues.

Matthew Seth Sarelson, Esq.
**DHILLON LAW GROUP, INC.**
Counsel for Defendants/Appellees
1601 Forum Place, Suite 403
West Palm Beach, Florida 33401
305-773-1952
Msarelson@dhillonlaw.com
Florida Bar No. 888281

---

[7] Appellant was expressly advised of the August 31, 2020 deadline to file suit in writing by her attorney when the attorney ended his representation. D.E. 1-1, p. 37.

**Certificate of Compliance**

I certify that this brief complies with (i) the type-volume requirement by containing 6,878 words, excluding exempt portions, and (ii) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).

Matthew Sarelson, Esq.
Counsel for Appellees
November 1, 2024

**Certificate of Service**

I certify that in addition to electronically filing, I emailed the filed copy of the brief on November 1, 2024 to the *pro se* Appellant, Melania Moore, at her email address vettechmnm@gmail.com.

Matthew Sarelson, Esq.
Counsel for Appellees
November 1, 2024